IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:11-CV-279-D

| | |
|---|---|
| DWAYNE SAMUEL WILLIAMS, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> BRIAN W. HALL, ) <br> ) <br> Defendant. ) | **ORDER** |

On April 29, 2011, Dwayne Samuel Williams ("Williams" or "plaintiff") filed a complaint in Wake County Superior Court against Detective Brian Hall ("Hall" or "defendant") and the city of Raleigh, North Carolina, asserting federal claims under 42 U.S.C. § 1983 and various state tort claims [D.E. 1-2]. Hall removed the action to federal court [D.E. 1]. The action arises out of Williams's arrest and detention in February 2009. On October 19, 2012, Hall filed a motion for summary judgment along with a supporting memorandum and exhibits [D.E. 38, 39]. On November 26, 2012, Williams responded in opposition and filed supporting exhibits [D.E. 50]. Williams has also filed a motion for leave to amend the complaint [D.E. 35] and a motion to strike expert testimony [D.E. 52]. As explained below, the court grants Hall's motion for summary judgment as to the federal claims, remands Williams's state law claims, and denies Williams's motion to amend and motion to strike.

I.

In April 2008, the Raleigh Police Department investigated a series of nighttime armed robberies in downtown Raleigh. Hall Aff. [D.E. 38-2] ¶ 5. On May 6, 2008, Hall and other police detectives interrogated Allen Jerome Smith ("Smith"), who had been linked to one of the robberies

by a fingerprint. Hall Aff. ¶ 9. Smith confessed to being the gunman for one of the robberies and acknowledged his involvement in the other robberies. Id. Smith implicated George Clements ("Clements") as the gunman and Williams as the driver for several of the robberies. Id. ¶¶ 9–10. On May 7, 2008, Hall swore arrest warrants against Clements and Williams for participation in six April 2008 robberies, with probable cause based on Smith's statements. Pl.'s Resp. Opp. Summ. J.; Hall Dep. [D.E. 38-19] 161–62.

On May 7, 2008, pursuant to the warrants, Williams was arrested and Detectives Rhodes and Faulk interrogated him. Pl. Dep. [D.E. 38-21] 161, 167–69; Hall Aff. ¶ 20. Hall was not present during Williams's arrest or interrogation. Hall Aff. ¶ 20. During the interrogation, Williams asserted his innocence and told the detectives that he could not have committed the crimes because he was either working or volunteering when the crimes were committed. Pl. Dep. 179–80, 294–95. Williams also revealed that he did know Smith, and that the two had a sexual relationship. Id. 141–50. Detective Rhodes called one of Williams's employers to confirm his employment and learned that Williams generally worked the night shift. Rhodes Dep. [D.E. 38-23] 29. Rhodes did not receive any documents showing the times that Williams was actually working. Id.[1] Nevertheless, Detective Rhodes and Sergeant Cherry agreed to release Williams without charge pending further investigation. See Pl. Dep. 176; Rhodes Report [D.E. 38-12] 3; Hall Aff. ¶ 22. Hall was not on duty and was not consulted when Williams was released. Hall Aff. ¶ 22. Hall was told that Williams was released so that additional investigation could be conducted. Id. Hall did not receive any further explanation regarding Williams's release. Hall Dep. 92, 98. The police conducted no subsequent investigation concerning Williams's alibi. See Rhodes Dep. 50–52; Cherry

---

[1] The evidence produced during discovery in this litigation shows that Williams was not, in fact, working at the times of the armed robberies. See Lively Dep. 174–77.

2

Dep. [D.E. 38-24] 165, 178–80.

In November or December 2008, Sergeant McLeod instructed Hall to inquire into the status of the May 7, 2008 warrants against Williams. See Hall Dep. 99. There was a disagreement within the robbery task force about whether the warrants should be served. Lively Dep. [D.E. 38-20] 181–83. Thus, Hall contacted Wake County Assistant District Attorney Matt Lively ("Lively") to ask how Hall should proceed. Id. Lively and Hall debriefed Smith on January 23, 2009, and Smith provided further details about the robberies and again stated that Williams had been involved. Hall Dep. 99; Hall Aff. ¶ 26; [D.E. 38-14]. After the debriefing, Lively instructed Hall to arrest Williams. Hall Aff. ¶ 26; Lively Dep. 81, 132. Lively was not aware that Hall intended to arrest Williams pursuant to the May 7, 2008 warrants. Lively Dep. 75–76. If Lively had been aware that Hall intended to use the old warrants, he would have instructed Hall to swear out new warrants. Id. 135–36.

On February 3, 2009, pursuant to May 7, 2008 warrants, Williams was arrested at work. Pl. Dep. 288. As a result of the arrest, Williams's employment was terminated. Id.

On May 29, 2009, Lively dismissed all charges against Williams. In dismissing the charges, Lively stated that "[t]he state's case is based entirely on the statements of a co-defendant . . . [who] was found to be completely unreliable." Lively Dep. 58–59.

Williams now asserts claims for false imprisonment, malicious prosecution, intentional infliction of emotional distress under North Carolina law, and claims for arrest without probable cause, unlawful detention, and unlawful initiation of criminal prosecution under 42 U.S.C. § 1983, all against Hall in his individual capacity. Compl. ¶¶ 66–145.[2]

---

[2] On July 13, 2011, Williams dismissed all claims against Hall in his official capacity [D.E. 15]. On November 8, 2012, Williams dismissed all claims against the city of Raleigh [D.E. 48]. On November 19, 2012, Williams dismissed any claim for direct relief under the North Carolina

3

This court reviews Hall's motion for summary judgment under the familiar standard of Rule 56. Summary judgment is appropriate when, after reviewing the record taken as a whole, no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis and quotation omitted). A trial court reviewing a motion for summary judgment should determine whether a genuine issue of material fact exists for trial. Anderson, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007).

As for Williams's section 1983 claims, Hall asserts that qualified immunity precludes his liability on these claims. Qualified immunity provides that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); see Reichle v. Howards, 132 S. Ct. 2088, 2093 (2012); Brandon v. Holt, 469 U.S. 464, 472–73 (1985). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986); see Reichle, 132 S. Ct. at 2093; Messerschmidt v. Millender, 132 S. Ct. 1235, 1244 (2012); Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2085 (2011); Pearson v. Callahan, 555 U.S.

---

Constitution [D.E. 49].

4

223, 231–32 (2009). Qualified immunity protects law enforcement officers from "bad guesses in gray areas" and ensures that they are liable only "for transgressing bright lines." Waterman v. Batton, 393 F.3d 471, 476 (4th Cir. 2005); Maciariello v. Sumner, 973 F.2d 295, 298 (4th Cir. 1992). "Whether an official protected by qualified immunity may be held personally liable for an alleged unlawful official action generally turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." Messerschmidt, 132 S. Ct. at 1245 (quotations omitted). "A police officer should prevail on an assertion of qualified immunity if a reasonable officer possessing the same information could have believed that his conduct was lawful." Slattery v. Rizzo, 939 F.2d 213, 216 (4th Cir. 1991) (emphasis omitted); see Messerschmidt, 132 S. Ct. at 1248; Pearson, 555 U.S. at 231.

When evaluating an assertion of qualified immunity, a court must "identify the specific right that the plaintiff asserts was infringed by the challenged conduct." Wilson v. Layne, 141 F.3d 111, 114 (4th Cir. 1998) (en banc), aff'd, 526 U.S. 603 (1999); see Adams v. Trs. of the Univ. of N.C.-Wilmington, 640 F.3d 550, 565 n.9 (4th Cir. 2011). Then, a court must ask two questions to determine whether qualified immunity applies. See Reichle, 132 S. Ct. at 2093; Pearson, 555 U.S. at 232; Brockington v. Boykins, 637 F.3d 503, 506 (4th Cir. 2011); Doe ex rel. Johnson v. S.C. Dep't of Soc. Servs., 597 F.3d 163, 169 (4th Cir. 2010); Bostic v. Rodriguez, 667 F. Supp. 2d 591, 605–06 (E.D.N.C. 2009). First, the court asks "whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right." Pearson, 555 U.S. at 232. Second, the court asks "whether the right at issue was clearly established at the time of defendant's alleged misconduct." Id. (quotation omitted). A court may answer either of these questions first. Id. at 236; see Reichle, 132 S. Ct. at 2093; al-Kidd, 131 S. Ct. at 2080. A defendant is entitled to qualified immunity if the answer to either question is "no." Reichle, 132 S. Ct. at 2093; Pearson, 555 U.S. at 236.

5

"To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Reichle, 132 S. Ct. at 2093 (quotations and alteration omitted); see al-Kidd, 131 S. Ct. at 2083; Anderson v. Creighton, 483 U.S. 635, 640 (1987); Cloaninger ex rel. Estate of Cloaninger v. McDevitt, 555 F.3d 324, 331 (4th Cir. 2009). Although a plaintiff may allege that a right was clearly established without citing "a case directly on point, . . . existing precedent must have placed the statutory or constitutional question beyond debate." al-Kidd, 131 S. Ct. at 2083; see Reichle, 132 S. Ct. at 2093; see also Wilson, 141 F.3d at 114. The "'clearly established' standard protects the balance between vindication of constitutional rights and government officials' effective performance of their duties by ensuring that officials can reasonably anticipate when their conduct may give rise to liability for damages." Reichle, 132 S. Ct. at 2093 (quotations omitted). "The law is clearly established such that an officer's conduct transgresses a bright line when the law has been authoritatively decided by the Supreme Court, the appropriate United States Court of Appeals, or the highest court of the State." Wilson, 141 F.3d at 114 (quotation omitted); cf. Reichle, 132 S. Ct. at 2094 (assuming without deciding that controlling federal court of appeals authority could be a dispositive source of clearly established law within a given circuit); Hope v. Pelzer, 536 U.S. 730, 741–42 (2002) (concluding that binding circuit precedent, a state agency regulation, and a Justice Department report combined to create clearly established law).

Essentially, Williams asserts in his section 1983 claims that Hall violated his Fourth Amendment right not to be arrested without probable cause. See Durham v. Horner, 690 F.3d 183, 188 (4th Cir. 2012). In assessing whether qualified immunity applies, "the question is not whether there actually was probable cause . . . , but whether an objective law officer could reasonably have believed probable cause to exist." Gomez v. Atkins, 296 F.3d 253, 261–62 (4th Cir. 2002); see

6

Wadkins v. Arnold, 214 F.3d 535, 539 (4th Cir. 2000); Torchinsky v. Siwinski, 942 F.2d 257, 260 (4th Cir. 1991).

Here, the parties agree that probable cause supported the warrants and Williams's May 2008 arrest pursuant to the warrants. See, e.g., Pl.'s Mem. Opp. Summ. J. 19. Hall obtained the warrants based mostly on information Smith provided. When Hall and Lively interviewed Smith in January 2009, they agreed that Smith's account of the robberies implicating Williams was still credible, and Lively instructed Hall to serve the warrants and arrest Williams based on Smith's statements. See Hall Aff. ¶ 26; Lively Dep. 81, 132.

Smith's statements, "standing alone and uncorroborated," would be sufficient to establish probable cause. United States v. Patterson, 150 F.3d 382, 385–86 (4th Cir. 1998); see Sennett v. United States, 667 F.3d 531, 535 (4th Cir. 2012). That Hall obtained the agreement of Assistant District Attorney Lively in January 2009 before arresting Williams is "compelling evidence" that his actions were reasonable and "weigh[s] heavily toward a finding that [Hall] is immune." Wadkins, 214 F.3d at 541–43. Similarly, the existence of warrants issued "by a neutral and detached magistrate" weighs heavily toward a finding that Hall's actions were reasonable. Id.; see Merchant v. Bauer, 677 F.3d 656, 663–65 (4th Cir. 2012); Torchinsky, 942 F.2d at 261–62. Absent circumstances suggesting that the warrants were invalid, that the warrants were nine months old does not undermine their support for Hall's belief that probable cause existed. See United States v. Hewlett, 395 F.3d 458, 461–62 (D.C. Cir. 2005). In sum, "[b]oth a prosecutor and a neutral and detached magistrate independently reviewed the evidence and concluded that there was probable cause. A reasonable officer would not second-guess these determinations unless probable cause was plainly lacking." McKinney v. Richland Cnty. Sherriff's Dep't, 431 F.3d 415, 419 (4th Cir. 2005). Accordingly, based on the record, an objective law enforcement officer could reasonably have

believed that probable cause existed in February 2009, and qualified immunity protects Hall.

In opposition to this conclusion, Williams argues that inconsistences among victims' statements, Smith's May 2008 statement, and Smith's January 2009 statement were such that no reasonable officer would have believed Smith and that Hall did not take reasonable care in analyzing the evidence. However, the inconsistencies—essentially, Smith's minimization of his role in several of the robberies, his failure to incriminate Williams for some of the robberies in his 2008 statement, and witness descriptions of cars that did not match Williams's car—would not preclude a finding of probable cause and do not undermine Hall's reasonable belief that probable cause existed. See United States v. Ortiz, 669 F.3d 439, 444–45 (4th Cir. 2012) ("Probable cause is a flexible standard that simply requires a reasonable ground for belief of guilt and more than bare suspicion." (quotation omitted)); Gomez, 296 F.3d at 262 ("[R]easonable law officers need not 'resolve every doubt about a suspect's guilt before probable cause is established.'" (quoting Torchinsky, 942 F.2d at 264)).

Williams also argues that the May 2008 decision to release Williams pending further investigation, and Hall's failure to investigate that release, precludes any reasonable belief that the warrants were still valid or that probable cause still existed in February 2009. Hall, however, did not ignore any exculpatory evidence, and his failure to undertake further investigation does not negate the reasonableness of his belief that probable cause existed. See McKinney, 431 F.3d at 418–19; Wadkins, 214 F.3d at 541. Moreover, had Hall investigated Williams's May 2008 release, he would not have discovered any exculpatory evidence and or any information negating probable cause. Rather, Detective Rhodes and Sergeant Cherry released Williams because his alibi that he was at work when the robberies occurred required further investigation. Furthermore, discovery in this litigation revealed that Williams was not working at the time of any of the robberies. Therefore, Williams's May 2008 release from custody, and the explanation for that release, reasonably did not
cause Hall to doubt the existence of probable cause. Thus, the facts of the case as Hall understood them and as they were presented to the magistrate judge in May 2008 were essentially unchanged when Williams was arrested in February 2009. Therefore, Hall reasonably believed that the probable cause that Williams concedes existed in May 2008 supported Williams's February 2009 arrest.

Finally, Williams argues that Hall acted unreasonably in informing Lively in January 2009 about the facts of the case. Williams argues that Hall should have "made [Lively] specifically aware of all the circumstances material to the decision to serve the arrest warrants." Pl.'s Mem. Opp. Summ. J. 25. Lively, however, determined that Williams should be arrested after Lively participated in interviewing Smith. Smith's statements are enough to support probable cause. See Patterson, 150 F.3d at 385–86. Moreover, Williams has not identified any misleading evidence Hall gave to Lively or any exculpatory evidence that Hall possessed but failed to give to Lively. See Merchant, 677 F.3d at 665; Wadkins, 214 F.3d at 542. Thus, Hall reasonably believed, and had no reason to doubt, that Lively's order to arrest Williams was based on probable cause. Accordingly, qualified immunity protects Hall, and the court grants Hall summary judgment as to the section 1983 claims.

Because there are no remaining federal claims, the court declines to exercise jurisdiction over Williams's state law claims. See 28 U.S.C. § 1367(c)(3). Accordingly, the court remands the action to Wake County Superior Court. See id. Waybright v. Frederick Cnty., 528 F.3d 199, 209 (4th Cir. 2008); Farlow v. Wachovia Bank of N.C., N.A., 259 F.3d 309, 316–17 (4th Cir. 2001); Thompson v. Prince William Cnty., 753 F.2d 363, 365 (4th Cir. 1985).

II.

Next, the court considers plaintiff's motion to amend the complaint, which plaintiff filed on September 29, 2012 [D.E. 35]. The motion to amend included the proposed amended complaint.

9

In the proposed amended complaint, Williams seeks to add various factual allegations to the complaint but does not seek to add any new claims. See [D.E. 36] 10–11. Hall opposes the motion to amend [D.E. 37].

The court should freely give leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). However, where a party seeks to amend a complaint after the date set forth in a scheduling order for such motions, the party must establish good cause under Rule 16. See Nourison Rug Corp. v. Parvizian, 535 F.3d 295, 298–99 (4th Cir. 2008); see Fed. R. Civ. P. 16(b)(4). The scheduling order required motions to amend filed after November 3, 2011, to meet the good cause standard under Rule 16. See [D.E. 22], 2.

Williams has failed to meet the good cause standard. Moreover, and in any event, the additional factual allegations in the amended complaint have no impact on the court's analysis of the section 1983 claims. Accordingly, the motion to amend is denied.

III.

In sum, the court GRANTS IN PART Hall's motion for summary judgment as to Williams's section 1983 claims [D.E. 38]. The court declines to exercise supplemental jurisdiction over Williams's state law claims and remands the action to Wake County Superior Court. The court DENIES plaintiff's motion to amend the complaint [D.E. 35] and DENIES plaintiff's motion to strike [D.E. 52]. Finally, the court GRANTS defendant's motion to seal [D.E. 59].

SO ORDERED. This **24** day of June 2013.

JAMES C. DEVER III
Chief United States District Judge

10

Case 5:11-cv-00279-D   Document 63   Filed 06/24/13   Page 10 of 10